UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOLITO DELACRUZ YU,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. 2:17-cv-00917 CKD (PS)<br><br><br><br>ORDER |

On July 26, 2017, the court held a hearing on defendant Wells Fargo's motion to dismiss this action for failure to state a claim. (ECF No. 7.) Plaintiff appeared pro se, and Adam Vukovic appeared telephonically on behalf of defendant. Plaintiff filed an opposition to the motion, and defendant filed a reply. (ECF Nos. 14 & 15.) After arguments, the court took the matter under submission. The parties have consented to magistrate judge jurisdiction to conduct all proceedings in this action.

I. Allegations

In his complaint, plaintiff alleges that defendant Wells Fargo violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") over many years, swindling plaintiff out of money and conspiring with third parties to harm him. He seeks damages in the amount of $2,800 "illegally withdrawn" from his business checking account, $25,000 for property losses incurred

/////

1

when his home and business were burglarized, and $1 million in lost business income. (ECF No. 1.)

The complaint alleges as follows: Plaintiff owns a small publishing company in Stockton that, for twenty-five years, has published a monthly magazine, <u>The Immigrants</u>. Between 1991 and 2001, plaintiff had business savings, business checking, and personal savings accounts with defendant bank.

Starting in April 2001, plaintiff noticed that $200 was missing from his business checking account every month. Plaintiff closed all his accounts, incurring a hefty penalty. Days after closing his accounts, he began receiving notices of insufficient funds. In August 2001, he received a letter from a Wells Fargo collection manager stating that he owed the bank $152. In September 2001, he received a letter from a Stockton-based collection agency concerning an alleged $222 overdraft debt to Wells Fargo. Plaintiff contested these charges with defendant, the collection agency, and the State Commissioner of the Department of Financial Institutions. In December 2001, he was informed that "a case has been opened in the Customer Assistance Group of the Office of the Comptroller of the Currency (OCC)." In January 2002, a Wells Fargo official sent him another letter stating that he owed the bank $222. In reviewing his monthly bank statements for 2001, plaintiff noted several errors and discrepancies. In February 2002, defendant sent him another letter concerning the $222 overdraft.

On the night of March 2, 2002, plaintiff's apartment and home office were burglarized. Missing items included his two computers and two printers, which he used to publish the magazine. Two weeks later, a Wells Fargo official wrote plaintiff that "The overdraft debt of $222.00 on your account still remains." In April 2002, the OCC informed plaintiff they could not assist him with his dispute with the bank and suggested he contact an attorney.

On the night of September 2, 2005, plaintiff arrived home to find his apartment burglarized again. His two computers and two printers were again missing.

In 2006, plaintiff received a letter from a Florida-based collections agency demanding that he pay the $222 allegedly owed to defendant. In 2010, he received a letter from a New York-based collection agency, demanding same. Plaintiff received additional collection letters on this

issue in early 2011. He maintained that he did not owe the money.

Around this time, plaintiff "experienced at least a dozen unusual incidents." The tires were stolen from his car. His car stereo was stolen in a separate incident. He received many harassing and threatening telephone calls, one in the middle of the night in which "an unknown caller appeared to be angry and lambasted Plaintiff using obscene, profane and unprintable language." Someone left graffiti near his apartment saying, "We know how to kill you."

In February 2011, "weary of the harassment and intimidation he was experiencing," plaintiff "reluctantly decided to pay the alleged overdraft debt." He sent in a money order in the amount of $17.76 as his first payment. He informed state agencies that he was the victim of strong-arm tactics by collections agencies. In March 2011, he mailed in a second installment of $17.76, informing the agency that he was "making this payment under protest."

In November 2015, plaintiff received a letter from defendant in response to his recent correspondence with the Consumer Financial Protection Bureau. Defendant's letter stated that they were "reviewing the issues mentioned" and hoped to get back to him shortly.

Plaintiff cites a 2017 news story about defendant's alleged business practices. Plaintiff is "certain there's a connection between [this article] and the latest incidents of drive-by shooting in Stockton, California," in which a three-year-old girl was shot and killed.

Plaintiff filed the instant action in May 2017.

II. Legal Standards

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

3

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

RICO makes it criminal "to conduct" an "enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A person injured by a RICO violation may bring a civil RICO action. § 1964(c). "To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. [Citation.] A pattern requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5). 'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010) (internal citations omitted).

Civil RICO claims are subject to a four-year statute of limitations. Rotella v. Wood, 528 U.S. 549, 553 (2000). In the Ninth Circuit, "the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." Pincay v. Andrews, 238 F.3d 1106, 1109 (9th Cir. 2001).

III. Discussion

Defendant asserts that this action is time-barred, as "the conduct complained of is so far beyond the four-year statute of limitations . . . that Plaintiff cannot state a claim." Injuries discovered before May 2013 could not give rise to a RICO claim brought in May 2017, and there is no basis alleged for equitable tolling.

Assuming the originating injury was defendant's imposition of a charge after plaintiff closed his accounts, that event occurred in 2001, twelve years too early for the instant claim. All subsequent actions by defendant and third-party collection agencies concerning this debt took place before February 2011, when plaintiff began making payments on the debt. The only timely allegation concerns defendant's implied connection to a drive-by shooting in Stockton in 2017.

In addition to being time-barred, plaintiff's allegations do not fulfill the elements of a RICO claim. There is no alleged "racketeering activity" or pattern of such conduct. Putting aside the parties' interactions about the debt, plaintiff's contention that defendant was involved in stealing his tires, robbing his house, painting graffiti on his wall, making threatening phone calls,

4

and orchestrating a drive-by shooting, is entirely speculative and far-fetched. Such allegations do not plausibly link defendant to any unlawful conduct.

In opposition to the motion, plaintiff points out he is a pro se plaintiff whose pleadings should be liberally construed. He alleges that he "continues to suffer" from defendant's infliction of financial harm. Plaintiff reiterates his claim that defendant is "engaged in a lucrative clandestine criminal activity – an activity that involves murder for profits." He alleges that some of defendant's customers have "mysteriously become victims of drive-by shootings and other suspicious deaths." He asserts that customers "do not realize that opening up a Wells Fargo account could, sometimes, cost someone to lose his or her own life."

Based on the foregoing, the undersigned concludes that defendant's motion to dismiss has merit. As plaintiff's claims do not appear curable by amendment, the court will dismiss the complaint with prejudice.

Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss (ECF No. 7) is granted;

2. The complaint (ECF No. 1) is dismissed with prejudice; and

3. The Clerk of Court shall close this case.

Dated: August 3, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 yu917.mtd